AO 106 (Rev. 04/10) Application for a Search Warrant          AUTHORIZED AND APPROVED/DATE: s/Daniel Gridley, Jr. 4/8/2025

# UNITED STATES DISTRICT COURT
## for the
### Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
AN IPHONE IN A GREEN CASE, LABELED WITH EVIDENCE CONTROL NUMBER 1B3, CURRENTLY LOCATED AT THE FBI OKLAHOMA CITY FIELD OFFICE, 3301 WEST MEMORIAL ROAD, OKLAHOMA CITY, OKLAHOMA )

Case No. M-25- 201 -STE

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute and to Distribute Controlled Substances |

The application is based on these facts:
See attached Affidavit of Bureau of Indian Affairs Special Agent, Nicholas Miller

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days:(_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Nicholas Miller, Special Agent, BIA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Apr 8, 2025

*Judge's signature*

City and state: Oklahoma City, Oklahoma

Shon T. Erwin, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Nicholas Miller, a Special Agent with the Bureau of Indian Affairs, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am employed as a Special Agent with the Bureau of Indian Affairs ("BIA"). I have been a law enforcement officer for seventeen (17) years, serving as a police officer, police canine handler, and supervisory police officer while employed with various law enforcement agencies. I attended the Oklahoma Council on Law Enforcement Education and Training ("CLEET") for basic police training. I attended the Federal Law Enforcement Training Center ("FLETC") at the Bridge Indian Police Academy ("IPA") for basic Indian country police officer training. I also attended FLETC for the Department of the Interior Investigator Training Program ("DOI ITP"). For the past fifteen (15) years, I have been employed with the BIA, Office of Justice Services ("OJS"). I am currently a Special Agent assigned to District II in Oklahoma. I am also a member of to the Federal Bureau of Investigations ("FBI") Safe Trails Taskforce as a Task Force Officer ("TFO"). My primary duties as a Special Agent are to investigate felony criminal offenses, which occur within the boundaries of the Indian reservations to which I am assigned. During my time as a Special Agent, I have taken part in numerous criminal investigations as the primary investigator or in a backup capacity. I have also received significant training in criminal investigations, including investigations into violent

crimes. As a Special Agent with the BIA, I am a law enforcement officer of the United States and empowered by law to conduct investigations of and to make arrests for violations of Federal law, including violations of the Major Crimes Act ("MCA"). Also, based on my training and experience, I am familiar with internet and social media resources and how they can assist law enforcement in criminal investigations. My investigative experience includes interviewing victims and witnesses, as well as conducting searches of physical locations, social media, and electronic devices pursuant to court order or consent. I have been trained in how to seek information using various court orders such as search warrants.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

4. The property to be searched is a cellular telephone, described as an iPhone in a black case, labeled with evidence control number 1B2 of FBI case number 198E-OC-4042803, hereinafter the "Device." The Device is currently located at 3301 W. Memorial Road, Oklahoma City, Oklahoma 73134, in the Western District of Oklahoma.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

6. On February 25, 2025, Chickasaw Nation Lighthorse Tribal Police Officer Jeremy Stein as working criminal interdiction on Interstate 35 northbound near mile marker 24, Carter County, Oklahoma. This location is within the boundaries of the Chickasaw Nation Indian Reservation and the Eastern District of Oklahoma.

7.  Officer Stein was working stationary within the above-mentioned location. Officer Stein observed a red in color Dodge Charger pass in front of his location. Officer Stein entered the roadway behind the red Dodge Charger to conduct a vehicle license plate check.

8.  While Officer Stein was attempting to get close enough to the red Dodge Charger, he observed the vehicle traveling in the right lane northbound on the divided four lane interstate. Officer Stein observed the driver of the vehicle fail to maintain his lane of travel by crossing over the white painted dividing line.

9.  Officer Stein conducted a traffic stop on the red Dodge Charger for the traffic violation. The vehicle bore a Florida license plate of 88EXMB.

10. Officer Stein made a passenger side approach and contacted the occupants, who he identified as driver Jordan HARDRIDGE (Native Male, Year of Birth 1993) and passenger Johnathan TALLIE (Non-Native Male, Year of Birth 1993).

11. During the interaction with the occupants, Officer Stein could smell a strong odor he associated with burnt marijuana. When a backup officer arrived, Officer Stein asked HARDRIDGE and TALLIE to exit the vehicle. TALLIE handed Officer Stein a black container and stated he just had some "weed".

12. A search of the vehicle was conducted by Officer Stein. During his search, he located two THC Medical Marijuana packages inside the center console of the vehicle. Under the front passenger seat, he located a black plastic bag, which contained a large baggie containing a crystal-like substance.

13. HARDRIDGE and TALLIE were placed under arrest. During the search of his person, HARDRIDGE was found in possession of an iPhone in a green case, identified as item 1B3, a broken flip phone and some money. TALLIE was found in possession of an iPhone in a

3

black case, identified as item 1B2. The iPhones, flip phone, money, and crystal-like substance were seized as evidence by Officer Stein. HARDRIDGE and TALLIE were transported to jail.

14. Officer Stein transported the evidence to the Chickasaw Nation Lighthorse Police Ardmore Office for processing. Officer Stein weighed the crystal-like substance in the baggie with scales at Chickasaw Nation Lighthorse Ardmore Office and obtained the reading of approximately 2.2 pounds. Officer Stein conducted a field test on the crystal-like substance, and it had a presumptive test result as positive for methamphetamine.

15. Based on my training and experience, users of cellular phones typically use the device for a plethora of activities including phone calls, messaging, email, taking videos and pictures. People typically carry their cell phones on their person or keep it close at hand even when in their residence. Such phones can be used to document crimes as they occur producing audio and video evidence. It only takes a matter of seconds for a competent iPhone user to begin to record video or take pictures of events that are occurring in their presence.

16. Based on my training and experience, direct phone calls and text messaging is one way people communicate with others. Records of these communications are stored on the cellular phone. Additionally, people can use apps such as Facebook and Snapchat to contact others by voice, text, or sending pictures/videos. These apps may save information about these communications onto the cellular phone as they occur. Records of previous conversations and contacts may also be saved to the cloud on external servers and be accessed by using the specific app on the cellular phone.

17. The Device is currently in the lawful possession of the Federal Bureau of Investigation (FBI). It came into the FBI's possession in the following way: it was seized by

Lighthorse Tribal Police Department as potential evidence in the drug trafficking investigation initiated by the Chickasaw Nation Lighthorse Tribal Police.

18. The Device is currently in storage at FBI Headquarters Oklahoma City evidence storage. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the Chickasaw Nation Lighthorse Tribal Police Department.

## TECHNICAL TERMS

19. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also

include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected

   to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

 d. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

 e. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

 f. Instant messaging (IM): A collection of technologies that create the possibility of real-time text-based communication between two or more participants via the Internet. Instant messaging allows for the immediate transmission of communications, including immediate receipt of acknowledgment or reply.

20. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, my training and experience, examining data stored on devices of this

7

type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21.   Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22.   *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

- a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

- b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

- c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

8

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

9

## CONCLUSION

25. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*[signature]*

Nicholas Miller
Special Agent
Bureau of Indian Affairs

Sworn to me on April 8, 2025:

*[signature]*

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

The property to be searched is described as an iPhone in black case, labeled with evidence control number 1B2 of FBI case number 198E-OC-4042803, hereinafter the "Device". The Device is currently located at 3301 W. Memorial Road, Oklahoma City, Oklahoma 73134, in the Western District of Oklahoma.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.  All records on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) and 846, which involve HARDRIDGE from March 1, 2024, to the present, including:

    a. records relating to communication with others as to the criminal offense above; including incoming and outgoing voice messages; text messages; emails; multimedia messages; applications that serve to allow parties to communicate; all call logs; secondary phone number accounts, including those derived from Skype, Line 2, Google Voice, and other applications that can assign roaming phone numbers; and other Internet-based communication media;

    b. records relating to documentation or memorialization of the criminal offense above, including voice memos, photographs, videos, and other audio and video media, and all ExIF information and metadata attached thereto including device information, geotagging information, and information of the relevant dates to the media;

    c. records relating to the planning and execution of the criminal offense above, including Internet activity, including firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered any Internet search engine, records of user-typed web addresses, account information, settings, and saved usage information;

    d. application data relating to the criminal offense above;

    e. lists of customers and related identifying information;

f. types, amounts, and prices of drug trafficked, as well as dates, places, and amounts of specific transactions;

g. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

h. any information relating to instructions for transportation, obtaining and distributing drugs, information relating to fees for transportation;

i. photographs or videos that may identify co-conspirators, locations, money, or drugs;

j. any information recording HARDRIDGE's or other co-conspirator's schedule or travel from March 1, 2024, to the present;

k. stored addresses or locations within mapping software that may identify locations recently visited;

l. any information related to co-conspirators, stash house locations used to store illegal controlled substances, admissions of criminal offenses and information related to the acquisition or attempted acquisition of other illegal controlled substances in the future or already completed and related identifying information; admissions also relating to other times HARDRIDGE was in possession of drugs; any information related to sources of acquiring illegal controlled substances, co-conspirators, aiders and abettors of information related to the illegal possession of firearms or drugs as well as others (including names, addresses, phone numbers, or any other identifying information); information relating to instructions for transportation, obtaining and storing illegally possessed firearms or drugs,

2

        information relating to means of transportation for illegally possessed firearms or drugs;

m. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phone books, saved usernames and passwords, documents, and browsing history; and

n. All records and information related to the geolocation of the Device at a specific point in time.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.